**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

TACO JOHN'S INTERNATIONAL, INC., and
SPICY SEASONINGS, LLC,

                                    Civil No. 22-1050 (JRT/LIB)

                        Plaintiffs,

v.                                  **MEMORANDUM OPINION AND ORDER**
                                    **ON CROSS MOTIONS FOR SUMMARY**
TACO CHON MEXICAN GRILL LLC, TACO          **JUDGMENT**
CHON MEXICAN GRILL II, LLC, and JUAN
RAMOS,

                        Defendants.

---

Christopher A. Young, **LARKIN HOFFMAN**, 8300 Norman Center Drive, Suite
1000, Minneapolis, MN 55437; Harold R. Bruno, III and Nicholas Labor,
**ROBINSON WATERS & O'DORISIO P.C.**, 1099 Eighteenth Street, Suite 2600,
Denver, CO 80202, for plaintiffs.

Kyle Patrick Hahn, 4039 Fifth Street Northeast, Minneapolis, MN 55421; Lee
A. Hutton, III, **THE HUTTON FIRM, PLLC,** 333 South Seventh Street, Suite
1110, Minneapolis, MN 55402, for defendants.

Plaintiffs Taco Johns International, Inc. and Spicy Seasonings, LLC ("Taco John's" or

"TJI") initiated this action against Taco Chon Mexican Grill, Taco Chon Mexican Grill II, LLC,

and the owner of Taco Chon, Juan Ramos (collectively, "Taco Chon"), for trademark

infringement, trademark dilution, unfair competition, and related state law claims.  Both

Taco John's and Taco Chon are restaurants specializing in Mexican or Mexican-inspired

cuisine.  TJI argues that the name "Taco Chon" infringes upon the Taco John's mark

because it creates a likelihood of confusion.  Taco Chon counterclaimed for abuse of process, arguing that TJI is engaging in inappropriate trademark bullying.

Before the Court are various motions: TJI's motion to exclude the expert testimony of Milissa Silva; TJI's motion for partial summary judgment on Taco Chon's abuse of process counterclaim; Taco Chon's motion for summary judgment on all claims; and TJI's motion to strike Taco Chon's reply pleading.

The Court will grant in part and deny in part the motion to exclude Silva.  Silva may testify as to her knowledge of traditional Mexican cuisine.  However, Silva also may not testify as to what certain consumers would choose or whether the average consumer would confuse the food served by each restaurant because she lacks the expertise to support such testimony.

The Court will grant Taco John's partial motion for summary judgment because there is not sufficient evidence for a jury to find that Taco John's is engaging in abuse of process.  Taco Chon's counterclaim will therefore be dismissed.

The Court will deny Taco Chon's motion for summary judgment on all other claims because genuine disputes of material fact remain as to the likelihood of confusion and whether there is evidence of tarnishment or dilution.  However, the Court finds that the Mark is both strong and famous and will instruct the jury accordingly.

## BACKGROUND

### I.   FACTS

#### A.  Taco John's Marks

Taco John's is a franchise of "quick service Mexican restaurants that sell Mexican food in a causal setting."  (Decl. James J. Creel ("Creel Decl.") ¶ 1, Mar. 9, 2023, Docket No. 72.)   There are approximately 370 Taco John's establishments across 23 states, including 80 different locations in Minnesota since 1972.  (*Id.* ¶¶ 2–3.)  Spicy Seasonings is the owner of various TACO JOHN'S marks, including trademarks, Registration Nos. 1,088,950 and 1,627,389; and a service mark, Registration No. 1,617,184 (collectively, the "Mark").  Spicy Seasonings licenses the Mark to TJI and its franchisees.  (*Id.* ¶¶ 4–5.)  The Mark is registered for use in commerce with "flat filled and folded filled tacos and tortillas, enchiladas, burritos, tamales, and chili," for "restaurant services," "fried potatoes, refried beans and garden salads," and for "chimichangas, hamburgers sandwiches, nachos and prepared rice for consumption on or off premises."  (Creel Decl., Ex. 1–3, at 1–4, March 9, 2023, Docket No. 72-1.)

The TACO JOHN'S mark has been in use for over fifty-years.  (Creel Decl. ¶ 13.)  TJI and its franchisees spend hundreds of thousands of dollars for print, radio, television, and online advertisement each year.  (*Id.* ¶¶ 7–10.)  TJI claims that its research shows that TACO JOHN'S is one of the most recognized Mexican restaurant brands.  (*Id.* ¶ 12.)  A representative sample of TJI's use of the Mark is included below.



(3rd Decl. Harold R. Bruno III ("3rd Bruno Decl."), Ex. 5 ("Pangerl Report"), at 2, Mar. 9,

2023, Docket No. 71-2.)

### B.  Taco Chon Restaurants

Defendant Juan Ramos is the founder of Defendants Taco Chon Mexican Grill LLC

and Taco Chon Mexican Grill II, LLC (together "Taco Chon").  (*See* Aff. Lee A. Hutton, III,

Ex. 1 ("Ramos Dep."), at 7:12–19, Jan. 26, 2023, Docket No. 33-1.)  Through the LLCs,

Ramos owns two Mexican restaurant-bars named "Taco Chon Mexican Grill," in

Burnsville, Minnesota and St. Cloud, Minnesota.  (*See id*. at 23:7–13, 58:5–10.)

Ramos began operating his restaurants under the name "Taco Chon" in 2019 when

he opened his first restaurant in Burnsville.  (*Id.* at 20:4–11.)  Aside from the front of the

restaurants,    Ramos    also    markets    online    through    domain    names    like

"www.tacochonmn.com."  (*See* 3rd Bruno Decl., Ex. 9, at 77, Mar. 9, 2023, Docket No. 71-

2.)  Defendants claim that the name "Taco Chon" is in honor of Ramos' his father, who

-4-

was the chef of the family's street taco stand in Mexico, and whose nickname was "Chon."

(Defs.' Mem. Supp. Mot. Summ. J. at 3, Feb. 16, 2023, Docket No. 54.)  A representative

example of his use of the name "Taco Chon" is included below.



(Pangerl Report at 2.)

The Burnsville location of Taco Chon is approximately 2 miles away from the

nearest Taco John's, whereas the St. Cloud Taco Chon is approximately 1.2 miles away

from the nearest Taco John's.  (Creel Decl. ¶ 17.)  Taco Chon asserts that its menu offers

"traditional" Mexican food, including tacos, burritos, quesadillas, nachos, and enchiladas.

(Decl. Brad Bergaus, Ex. 1, at 2, Mar. 9, 2023, Docket No. 70-1.)  Taco Chon also serves

alcohol.  (Ramos Dep. at 142:23–143:15.)

### C.  Pre-litigation Communications

TJI claims to have learned of Defendants' use of "Taco Chon" in January 2022.

(Creel Decl. ¶ 14.)  TJI sent a cease-and-desist letter to Ramos on February 1, 2022,

demanding that he cease identifying the restaurants as "Taco Chon."  (1st Decl. Harold R. Bruno III ("1st Bruno Decl."), Ex. 2, Jan. 26, 2023, Docket No. 40-2.)  TJI's counsel also spoke with Ramos regarding the alleged infringement.  (Ramos Dep. at 111:25–112:2.)  Ramos claims that TJI's counsel threatened that if he did not change the name of the restaurant, they would "shut [him] down."  (*Id.* at 113:22–114:20.)

## II.    PROCEDURAL HISTORY

TJI brought claims of trademark infringement, trademark dilution, and unfair competition under the Lanham Act, and unfair and deceptive trade practices and trademark dilution claims under state law.  (*See generally* Compl., Apr. 26, 2022, Docket No. 1.)  Defendants answered and counterclaimed abuse of process.  (Answer and Countercl. at 9, May 16, 2022, Docket No. 14.)  No motion to dismiss was filed and the parties engaged in discovery.

### A.  Expert Testimony

As part of discovery, the parties produced various expert reports.

#### 1.       Defendants' Experts

Taco Chon offers the testimony of Elizabeth Pangerl, a creative director with experience in designing, developing, and executing brands.  (Pangerl Report at 1.)  Pangerl has a bachelor's degree in marketing from the University of Minnesota.  (*Id.* at 7.)  Pangerl was retained by Defendants to compare "Taco Chon" to the Taco John's mark.  (*Id.* at 1.)  Pangerl concludes that that Taco Chon "appeals to Mexican nationals, Mexican-Americans, and Americans who consciously chose [sic] an authentic dining experience."

(*Id.* at 5.)  Pangerl also opines that the "customer experience for each establishment is profoundly different and begins with brandmarks that present very different promised experiences," specifically that "Taco Chon Mexican Grill is a dining experience, while Taco John's is a fast-food experience."  (*Id.* at 5–6.)

Taco Chon also offers the testimony of Milissa Silva.  Milissa Silva is a Mexican American entrepreneur and self-described multicultural expert.  (Decl. Nicholas F. Labor, Ex. 1 ("Silva Expert Report"), at 9, Jan. 31, 2023, Docket No. 44-1.)  Silva has a bachelor's degree in Sociology and Spanish from the University of St. Thomas.  (*Id.*)  Silva is best known for her leadership at "El Burrito Mercado," a Mexican restaurant and marketplace in St. Paul, Minnesota. (*Id.*)  Silva speaks publicly on the topics of Mexican culture, cuisine, and diversity in the local community.  (*Id.*)

Silva was retained by Defendants to offer her opinion on the type of cuisine that Taco Chon serves and whether customers may confuse the products.  (*Id.* at 2.)  She bases her opinions on her knowledge of Mexican culture, her experience as the owner/operator of El Burrito Mercado, and by examining the goods and services offered by each of the restaurants.  (*Id.*)

Silva's report describes typical Mexican dishes, what "authentic" or "traditional" means in the context of Mexican cuisine, the staple ingredients used, and the similarities and differences between Mexican cuisine and "Tex-Mex" cuisine.  (*See id.* at 3, 6.) Silva's conclusions can be broken down into three distinct assertions: (1) that Taco John's offers

"Tex-Mex" food, which was created in the United States, while Taco Chon offers traditional and authentic Mexican cuisine; (2) that consumers looking for Tex-Mex food would choose Taco John's, while those looking for traditional Mexican cuisine would choose Taco Chon; and (3) that a reasonable consumer would not confuse items served by Taco Chon and by Taco John's because they do not appear to be similar and instead cater to different types of clientele. (*Id.* at 7.)

### 2. Plaintiffs' Experts

Plaintiffs counter Pangerl's report and testimony with an expert report by Jesse Egbert, an associate professor of Applied Linguistics with a Ph.D. in Applied Linguistics from Northern Arizona University. (3rd Bruno Decl., Ex. 6 ("Egbert Report"), at 22, Mar. 9, 2023, Docket No. 71-2.) Egbert challenges Pangerl's credentials and opines that there are substantial similarities between the sight, sound, and meaning of the marks. (*Id.* at 13.) Egbert notes that the marks look very similar because they each consist of two words, and because "John's" has five letters and "Chon" has four—three of which are shared (O, H, and N). (*Id.* at 17.) Egbert also opines that "John's" and "Chon" sound very similar because they are each made up of three syllables, and because their English pronunciation is very similar when each word is broken down into is phonemes. (*Id.* at 17–18.) Finally, Egbert opines that the meaning is similar because they reference tacos and a male name. (*Id.* at 19–20.)

Plaintiffs also offer the testimony of Aaron R. Brough, an associate professor of marketing at Utah State University with a Ph.D. from Northwestern University. (*See* 3rd

Bruno Decl., Ex. 7 ("Brough Report"), at 60, Mar. 9, 2023, Docket No. 71-2.)  Brough was

retained to review the Pangerl Report's methodology and conclusions.  (*Id.* at 43.)  He

primarily challenges Pangerl's methodology.  (*Id.* at 44, 55.)

### B.  Present Motions

TJI has moved to exclude the testimony of Milissa Silva.  (Mot. Exclude Silva, Jan.

31, 2023, Docket No. 42.)  TJI also moved for a partial motion for summary judgment on

Taco Chon's abuse of process counterclaim.  (Pl.'s Mot. Partial Summ. J., Jan. 26, 2023,

Docket No. 37.)  Of note, TJI has not moved for summary judgment on its claims.  Taco

Chon moved for summary judgment on all claims.  (Defs.' Mot. Summ. J., Feb. 16, 2023,

Docket No. 60.)[1]

### MOTION TO EXCLUDE

The Court will first address the motion to exclude the testimony of Milissa Silva

before considering the motions for summary judgment.

---

[1] Plaintiffs also moved to strike Defendants reply briefing in relation to the motion for summary judgment.  (Mot. Strike Pleading, April 13, 2023, Docket No. 76.)  The Court finds that Taco Chon did violate Local Rule 7.1(f)(1)(A) when they exceeded the 12,000-word limit for a memorandum of law without prior permission from the Court.  The violation was particularly blatant because they exceeded the word limit in **both** the initial memorandum of law, and in the reply memorandum of law, thus submitting twice as many words as permitted by the Local Rules of this district.  *See* LR 7.1(f)(1)(B).  Word limits serve an important role given the significant caseload before this district.  The Court is compelled to warn Defendants that future violations will not be tolerated.  However, as Defendants have acknowledged the violation, and because the additional briefing did not have an impact on the outcome of the motions, the Court will deny the motion to strike the pleading and will not impose sanctions, at this time.

## I.      STANDARD OF REVIEW

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  Fed. R. Evid. 702.  The district court has a gate-keeping obligation to make certain that all testimony admitted under Rule 702 satisfies the prerequisites and that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).  The proponent of the expert testimony has the burden of establishing by a preponderance of the evidence that the expert is qualified, that his or her methodology is scientifically valid, and that "the reasoning or methodology in question is applied properly to the facts in issue."  *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757–58 (8th Cir. 2006).  Expert testimony is inadmissible if it is "speculative, unsupported by sufficient facts, or contrary to the facts of the case."  *Id.* at 757.

"[T]he trial judge [has] considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  Furthermore, the Eighth Circuit has held that "[c]ourts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility."  *Marmo*, 457 F.3d at 758.  "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination."  *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988).  The Eighth Circuit has stated that "[o]nly if [an] expert's opinion is so fundamentally unsupported that it can

offer no assistance to the jury must such testimony be excluded." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929–30 (8th Cir. 2001) (quoting *Hose v. Chi. Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995)).

## II.   ANALYSIS

TJI argues that Silva's testimony must be excluded because it provides nothing that is not already "within the knowledge or experience of lay people." *Ellis v. Miller Oil Purchasing Co.*, 738 F.2d 269, 270 (8th Cir. 1984) (citation omitted).  Specifically, TJI takes issue with Silva's third opinion—that the food offered at Taco Chon is different from the food offered at Taco John's—because a jury can compare the menus and reach their own conclusion.

Silva's experience arguably makes her an expert on traditional Mexican cuisine and could help the jury determine whether, despite the apparent similarities, the food is readily distinguishable by customers.   The closeness of the products is relevant to whether there is a likelihood of confusion sufficient to constitute trademark infringement. *Select Comfort Corp. v. Baxter*, 996 F.3d 925, 933–34 (8th Cir. 2021), *cert. denied sub nom. Dires, LLC v. Select Comfort Corp.*, 142 S. Ct. 561 (2021).   If Silva can provide helpful background of what is considered traditional Mexican cuisine, then the jury can utilize that information to make its own determinations as to how closely the food served resembles each other.

However, the Court finds that Silva is not qualified to offer opinions related to which consumers would choose which restaurant.  Taco Chon has not demonstrated that

Silva is an expert on consumer sciences, and she does not have a background in marketing or a related field.  Additionally, she neither conducts nor cites to any studies on consumer choice.  Therefore, any opinion she offers on how the average consumer chooses where to eat is not the "product of reliable principles and methods."  Fed. R. Evid 702(c); *see also Kumho Tire Co.*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592) ("[T]he trial judge must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline.").

For the same reasons, Silva may not opine that a reasonable consumer would not confuse the food offered by the restaurants.  To state that consumers would not confuse the food is practically to state that there is no likelihood of confusion between the marks, which is the central issue for the jury and the Court to decide in this litigation.

To summarize, the Court will grant in part and deny in part the motion to exclude as follows: Silva **MAY** testify as to the characteristics of traditional Mexican cuisine as typically found in Mexico.  She may also testify as to the difference between traditional Mexican cuisine and Tex-Mex food.  Silva **MAY NOT** testify whether consumers may prefer one or the other, and whether the average consumer may confuse the food from the restaurants.

## CROSS MOTIONS FOR SUMMARY JUDGMENT

The Court will next consider Taco John's motion for partial summary judgment on Taco Chon's counterclaim and Taco Chon's motion for summary judgment.  Notably, Taco John's did not move for summary judgment on any of its claims.

## I.      STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial.  *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

## II.      TACO JOHN'S PARTIAL MOTION FOR SUMMARY JUDGMENT

Taco Chon's sole allegation in its counterclaim is that TJI filed this lawsuit "knowing that Defendants did not infringe upon their Mark but with an ulterior motive of intimidating, embarrassing and harming Defendant's reputation among other things." (Answer and Countercl. ¶ 80.)  Taco John's moved for summary judgment on this claim, arguing that there is no evidence of an ulterior motive.

In Minnesota, abuse of process "is the employment of legal process for some purpose other than that which it was intended by the law to effect." *Nygard v. City of Orono*, 39 F.4th 514, 520 (8th Cir. 2022) (*quoting Dunham v. Roer*, 708 N.W.2d 552, 571 n.5 (Minn. Ct. App. 2006)), *cert. denied*, 143 S. Ct. 448 (2022) An abuse-of-process claim requires proof of an ulterior purpose and the act of using the process to accomplish a result not within the scope of the proceeding in which it was issued. *Id.* (*citing Kittler & Hedelson v. Sheehan Props., Inc.*, 295 Minn. 232, 203 (1973)).

Courts routinely find that the mere filing of a lawsuit on its own is not sufficient to establish a claim for abuse of process. *See Surgidev Corp. v. Eye Tech., Inc.*, 625 F. Supp. 800, 805 n.4 (D. Minn. 1986) (collecting cases). Taco Chon does not challenge this, but instead argues that the claim is not only based on the filing of the lawsuit, but on the lack of merits and evidence. But the merits of the lawsuit, and the related evidence, are still very much in question. Therefore, the Court cannot yet conclude that TJI initiated this lawsuit without any evidence.

Even if the Court construes all facts in favor of Taco Chon, there is no evidence that TJI had any ulterior motives in filing this lawsuit. Taco Chon fails to provide any evidence that suggests TJI filed this lawsuit to obtain a result "not within the scope of the proceeding." No reasonable jury could conclude otherwise. The very purpose of a trademark infringement lawsuit is to force the allegedly infringing party to change its mark. Though Taco Chon accuses TJI of bullying a much smaller business, this is not an

-14-

uncommon dynamic in trademark infringement cases.  Ultimately, Taco Chon has not

provided any evidence of an ulterior motive.  And even if a jury believed that Taco John's

seeks to "shut down" Taco Chon, that would not make an otherwise legitimate trademark

lawsuit illegitimate.  The Court will therefore grant the motion for summary judgment on

the abuse of process counterclaim.

## III.    TACO CHON'S MOTION FOR SUMMARY JUDGMENT

Taco Chon moved for summary judgment on each of TJI's claims.  After considering

the parties' arguments, the Court concludes that material disputes of fact remain as to

each of the claims and that each must be submitted to the jury.  The Court will discuss

each claim accordingly.

### A.  Trademark Infringement and Unfair Competition

The Lanham Act provides federal protection for trademarks.  It "was intended to

make 'actionable the deceptive and misleading use of marks,' and 'to protect persons

engaged in . . . commerce against unfair competition." *Dastar Corp. v. Twentieth Century*

*Fox Film Corp.*, 539 U.S. 23, 28 (2003) (quoting 15 U.S.C. § 1127).  It provides causes of

action for trademark infringement and for unfair competition.   While trademark

infringement refers to the use of similar marks on similar or related products or services,

unfair competition refers to the false designation of origin or other false representation

used in connection with the sale of a product. 15 U.S.C. § 1125(a)(1); 15 UC 1114(a)(1).

To sustain a claim for trademark infringement, a plaintiff must show (1) that they

are the owner of a valid mark, and (2) that the defendant is using the mark in a way that

is likely to cause confusion. *Paisley Park Enters., Inc. v. Boxill*, 299 F. Supp. 3d 1074, 1088 (D. Minn. Oct. 26, 2017).  The second prong is referred to as the "likelihood of confusion" requirement, and satisfaction of it is necessary to succeed on federal and state infringement and unfair competition claims.   15 U.S.C. § 1114(1)(b); 15 U.S.C. § 1125(a)(1)(A); *see Am. Dairy Queen Corp. v. W.B. Mason Co., Inc.*, 543 F. Supp. 3d 695, 712 (D. Minn. June 10, 2021); *DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 935 n.3 (8th Cir. 2003) (noting that state and federal trademark infringement claims were "coextensive" and subject to the same analysis, negating need to discuss state law claims independently).

The Eighth Circuit employs a list of nonexclusive factors (the "*SquirtCo* factors") to determine whether there is a likelihood of confusion.  *Select Comfort Corp.*, 996 F.3d at 933.  The factors include:

> (1) the strength of the owner's mark; (2) the similarity of the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to 'pass off' its goods as those of the trademark owner; (5) incidents of actual confusion; and (6) the type of product, its costs and conditions of purchase.

*Id.* (*citing SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980)).  No one factor is controlling and, depending on the context, one factor may carry more weight than another.  *Id.*  Additionally, the factors are not independent and "a strong showing as to one factor may serve to make a different factor more or less important."  *Id.* at 933–34 (citation omitted); *see also ConAgra, Inc. v. George A. Hormel & Co.*, 990 F.2d 368, 371

(8th Cir. 1993) ("[W]hen 'products are closely related, less similarity in trademarks is necessary to support a finding of infringement.'") (quoting *SquirtCo*, 628 F.2d at 1091).

The likelihood of confusion is "a highly fact-intensive inquiry both as to the assessment of the evidence concerning each factor and as to the overall synthesis of factors and the evidence." *Select Comfort Corp.*, 996 F.3d at 934.  The goal for the fact finder is to "try to capture a holistic view of the normal experiences for any given industry, product, or service," and the factors are meant to "guide the finder of fact towards considerations generally thought to be material to the consuming public's understanding of product source or affiliation." *Id.*  The likelihood of confusion analysis is highly context specific.

Taco Chon moved for summary judgment, arguing that the name "Taco Chon" is not similar to the Taco John's mark, and that Taco John's has failed to put forth evidence showing a likelihood of confusion.  The Court will discuss each of the relevant factors along with the evidence on the record.

### 1) Strength of the TACO JOHN'S Mark

The "[t]wo relevant measurements of a mark's strength are its conceptual strength and its commercial strength." *Lovely Skin, Inc. v. Ishtar Skin Care Prods., LLC*, 745 F.3d 877, 888 (8th Cir. 2014).  The conceptual strength of a mark depends on whether it is considered (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful. *See Cellular Sales, Inc. v. Mackay*, 942 F.2d 483, 485 (8th Cir. 1991) (citation omitted).  "'An arbitrary or fanciful trademark is the strongest type of mark and is afforded the highest

level of protection,' a generic mark 'merits no trademark protection,' and '[s]uggestive and descriptive marks fall somewhere in between.'"  *Am. Dairy Queen Corp.*, 543 F. Supp. at 713 (D. Minn. 2021) (quoting *Duluth News-Trib., a Div. of Nw. Publ'ns, Inc. v. Mesabi Pub. Co.*, 84 F.3d 1093, 1096 (8th Cir. 1996)).

TJI has disclaimed the word "TACO," and therefore, the strength analysis depends on the word "JOHN'S" as used to describe restaurant services and Mexican food.  (*See* Creel Decl., Ex. 2, at 2.)  TJI argues that "JOHN'S" is arbitrary.  "'Arbitrary marks are comprised of words in common usage, but, because they do not suggest or describe any quality, ingredient, or characteristic of the goods they serve, are said to have been arbitrarily assigned.'"  *Roederer v. J. Garcia Carrion, S.A.*, 732 F. Supp. 2d 836, 866 (D. Minn. 2010) (quoting *Sara Lee Corp. v. Kayser–Roth Corp.,* 81 F.3d 455, 464 (4th Cir.1996)). The Court finds that TACO JOHN's fits the definition of an arbitrary mark because "JOHN'S" is a common name but does not describe the restaurant's offerings and is therefore conceptually strong.

TJI also argues that the TACO JOHN'S mark is commercially strong because of its extensive recognition in the marketplace.  "In the likelihood of confusion context, commercial strength is based on the 'public recognition and renown' of the mark as shown by the amount of advertising, sales volume, features and reviews in publications, and survey evidence."  *Zerorez Franchising Sys., Inc. v. Distinctive Cleaning, Inc.*, 103 F. Supp. 3d 1032, 1042 (D. Minn. 2015).  Taco John's has more than 370 locations across 23

states.  (Creel Decl. ¶¶ 2–3.)  Its sales have routinely exceeded more than $371 million, and TJI and its franchisees spend a significant amount on advertisements each year. (Creel Decl. ¶¶ 7–10.)  Given the history of the mark, the size of the business, and its advertisement activity, the commercial strength clearly favors a finding that the TACO JOHN'S mark is strong.

Taco Chon argues that Plaintiffs have falsely aggrandized the strength of the Mark. It also claims that that the Mark has lost its ability to serve as a unique identifier of TJI's products because it has been used with various logos over time.  But each of Taco Chon's arguments are conclusory in nature and none constitute evidence that the TACO JOHN'S mark is not strong.  Therefore, although the ultimate issue of likelihood of confusion will be submitted to the jury, the Court finds that there is no genuine dispute of fact as to whether the TACO JOHN's mark is strong and will instruct the jury as such.

### 2)  Similarity of the Marks

The similarity of the marks is the most hotly contested factor in this case.  Whether two marks are similar typically depends on the sound, sight, and meaning of the mark. *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 765 (8th Cir. 2010) ("We first consider the sight, sound, and meaning argument.").  Similarity is based on an examination of the marks as a whole.  *SquirtCo*, 628 F.2d at 1091.  Additionally, "[w]here the products are closely related, less similarity in the trademarks is necessary to support a finding of infringement."  *Id*.

Taco Chon first argues that the marks are visually distinct because the full name of its restaurants is "Taco Chon Mexican Grill"—not merely "Taco Chon."  In support, Taco Chon offers Pangerl's testimony, who opines that the term "Mexican Grill" is significant because it signifies that it is a restaurant-bar or grill, a "place that offers services for formal dining and sometimes alcoholic beverages."  (Pangerl Report at 3–4.)

However, TJI persuasively argues that the generic term "Mexican Grill" has no trademark significance in this case.  *See In Re Dixie Restaurants, Inc.*, 105 F.3d 1405, 1407 (Fed. Cir. 1997) (finding that "[n]either the design element nor the generic term 'café' offers sufficient distinctiveness to create a different commercial impression").  It may well be that the phrase "Mexican Grill" is sufficient for a jury to differentiate between the marks, but a jury may find otherwise if it determines that the dominant aspect of the restaurant's name is "Taco Chon."  *See In re Nat. Data Corp.*, 753 F.2d 1056, 1058 (Fed. Cir. 1985) (noting that it may be proper to give more or less weight to a particular feature of a mark).  Additionally, TJI offers its own expert testimony to argue that the marks are visually similar.  (*See* Egbert Report at 17.)

Second, Taco Chon also argues that the two names sound similar only if "Chon" is pronounced incorrectly.  The Court takes judicial notice that—when properly pronounced in Spanish—the word "Chon" sounds different than the proper English pronunciation of "John's."  Nevertheless, there is no "correct" pronunciation of a word in trademark law. *See J. B. Williams Co. v. Le Conte Cosmetics, Inc*., 523 F.2d 187, 192 (9th Cir. 1975) (holding

it was error for the trial court to determine that Americans would pronounce "Le Conte" in the French manner), *cert. denied,* 424 U.S. 913 (1976); *Pocono Rubber Cloth Co. v. J.A. Livingston, Inc.*, 79 F.2d 446, 448 (3d Cir. 1935) ("It is absolutely impossible for the defendant to control the pronunciation which the trade would give to the word."); *see also* 4 J. McCarthy on Trademarks and Unfair Competition § 23:22 (5th ed. 2023).

Eighth Circuit precedent is clear that "we must evaluate the impression each mark is likely to have on a purchaser exercising the attention usually given by purchasers of such products." *Sensient Techs. Corp.*, 613 F.3d at 764 (citation omitted). Therefore, the question is not whether there is a right way to pronounce "Taco Chon," but rather how the average consumer pronounces and interprets the marks. *See Popular Bank of Fla. v. Banco Popular de Puerto Rico*, 9 F. Supp. 2d 1347, 1359 (S.D. Fla 1998) (finding a likelihood of confusion in part because "[g]iven the large number of people fluent in Spanish in the South Florida area, the Spanish translation [of the mark] is likely to be recognized as the equivalent by South Florida consumers.").

The Court is mindful that determining whether the two marks sound similar is a sensitive issue as it necessarily involves questions of culture, ethnicity, and language. But TJI offers the expert testimony of Jesse Egbert, a linguistics expert who opines that there are substantial visual, auditory, and meaning similarities between the marks. (*See* Egbert Report at 16–20.) Egbert's expert opinion creates a genuine dispute of material fact

regarding the similarity of the pronunciation of marks.  This determination is best left for the jury.

### 3)  The Similarity of the Product

Next, the Court must consider the similarity of the products.  "If products are wholly unrelated this factor weighs against a finding that confusion is likely . . . [i]f the products are closely related, and it is reasonable for consumers to believe the products come from the same source, confusion is more likely."  *Davis v. Walt Disney Co.*, 430 F.3d 901, 904 (8th Cir. 2005) (quotation marks and citation omitted).

There are some obvious similarities in the products offered by both restaurants. For instance, there is no dispute that the restaurants share a number of menu items, including tacos, burritos, quesadillas, nachos, enchiladas, and others.  (Decl. Brad Bergaus, Ex. 1, at 2.)  Taco Chon asserts that its food is very different from that of TJI's because it offers traditional Mexican food, while TJI offers "Tex-Mex."  Taco Chon offers both Pangerl's and Silva's testimony to explain how "traditional Mexican" and "Tex-Mex" are distinct types of cuisine.  (*See* Pangerl Report at 4; Silva Expert Report at 7.)  However, given the similarity in the types of products, the overlap in many menu items, and the competing testimony, the Court finds that this factor constitutes a genuine dispute of fact that is ill-suited for summary judgment and must be submitted to the jury.

### 4)  Defendants' Intent

The fourth factor is whether the alleged infringer intended to pass off its goods as the trademark owner's goods.  *Davis*, 430 F.3d at 903.  Ramos alleges that the origin of

"Taco Chon" is his father's nickname, "Chon."  He also alleges that he did not know of the TACO JOHN'S mark prior to selecting the name of his restaurant.  TJI challenges Ramos' credibility on this issue because Ramos has been in the United States since 2000 and worked as a manager of a Taco Bell—Taco John's primary competitor—for a significant period of time.  Credibility determinations are best left for the jury, so the Court will submit this factor to the jury as well.

### 5)  Incident of Confusion

Although an actual incident of confusion is not required to succeed in an infringement case, *Sensient Techs. Corp*, 613 F.3d at 768, Taco Chon argues that summary judgment is warranted because TJI has brought forth no evidence of actual confusion. But TJI offers at least one piece of evidence: the declaration of Ms. Van Zee, who claims that when she first heard the name "Taco Chon," she thought it sounded similar to TACO JOHN'S.  (3rd Bruno Decl., Ex. 3 ("Van Zee Decl.") ¶¶ 4–5, at 35–36, Mar. 9, 2023, Docket No. 71-1.)  The Court therefore finds that this factor does not support entering summary judgment in favor of Taco Chon and must submit this to the jury.

### 6)  Degree of Care

The sixth and final factor is the degree of care reasonably expected of potential customers when choosing the products at issue.  "(I)n a trademark infringement action the kind of product, its cost and the conditions of purchase are important factors in considering whether the degree of care exercised by the purchaser can eliminate the likelihood of confusion which would otherwise exist." *SquirtCo.* 628 F.2d at 1091 (citation

omitted).  Generally, the more expensive a product or service, the more time and effort that consumers are expected to expend when making a decision, lowering the likelihood of confusion.  *Am. Dairy Queen Corp.*, 543 F. Supp. 3d at 717 (citation omitted).  When the product is not expensive, other factors may affect the consumer's degree of care, such as distribution methods.  *Id.* (*citing ZW USA, Inc. v. PWD Sys., LLC*, 889 F.3d 441, 447–48 (8th Cir. 2018)).

Taco Chon argues that TJI has no evidence to support that ordinary prudent purchasers are likely to buy Taco Chon believing they were purchasing Taco John's.  But that is not the proper inquiry.  The question is what degree of care the average consumer of Mexican food, of any kind, exercises prior to purchasing Mexican food.  This inquiry remains a genuine dispute of material fact such that summary judgment is not proper.

To summarize, the Court will submit to the jury whether the facts in this case establish a likelihood of confusion sufficient to constitute trademark infringement or unfair competition.  However, the Court will instruct the jury that the TACO JOHN'S mark is strong as a matter of law.

### B.  Trademark Dilution

TJI also brings a trademark dilution claim and accuses Taco Chon of diluting the distinctiveness of the TACO JOHN'S mark by "eroding the public's exclusive identification of the Mark with TJI"; by "tarnishing and degrading the positive association and quality connotation of the mark"; and by "lessening the capacity of the Mark to identify and distinguish [TJI's] goods and services."  (Compl. ¶ 40.)

If a trademark is deemed "famous" it may be protected against dilution in the form of "tarnishing" or "blurring." 15 U.S.C. § 1125(c). "Dilution by tarnishment" refers to an association arising from the similarity between a mark and a famous mark "that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C). In contrast, "dilution by blurring" is an association between a mark and a famous mark "that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B). Dilution claims are meant to protect the holder of a famous trademark "from misappropriation of its investment in the mark," regardless of confusion. *Select Comfort Corp.*, 996 F.3d at 933 (citation omitted). This cause of action is reserved for a select class of marks: "those marks with such powerful consumer associations that even non-competing uses can impinge their value." *Everest Capital Ltd. v. Everest Funds Mgmt., LLC*, 393 F.3d 775, 763 (8th Cir. 2005) (quotation omitted). Thus, the Court must determine whether the TACO JOHN's mark is famous, and if so, whether TJI has presented sufficient evidence of blurring or tarnishment so as to survive summary judgment.

### 1) The Mark's Fame

In determining whether the mark is sufficiently famous, courts consider all relevant factors including:

> (1) the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark was registered.

*Am. Dairy Queen Corp.*, 543 F. Supp. 3d at 708–09 (citation omitted); *see also* 15 U.S.C. § 1125(c)(2)(A).  "The judicial consensus is that 'famous' is a rigorous standard."  *Everest Capital Ltd.*, 393 F.3d at 763.

Taco Chon concedes that the TACO JOHN'S mark has been owned for a significant amount of time but challenges whether it is famous because TJI advertises mostly to Midwest states, where the majority of Taco John's locations are located.  However, there is no threshold number of states needed for a mark to be famous, and Taco John's has locations in every region of the country.  *See* 15 U.S.C. § 1125 (c)(2)(a); *see also Ledo Pizza Sys., Inc. v. Singh*, No. 13-2365, 2014 WL 3810524, at *5 (D. Md. July 31, 2014) (concluding that the mark qualified as famous even though only in six states), *report and recommendation adopted*, 2014 WL 11485331 (D. Md. Sept. 30, 2014).

For the same reasons that the Court finds that the Mark is strong, the Court concludes that the Mark is famous as a matter of law.  The Mark's registration, its longstanding history of use, the sales volume, the geographic extent, and the significant spending in advertisement each year all support the Mark's fame.  (Creel Decl. ¶¶ 7–11.) Furthermore, Taco Chon puts forth no evidence that refutes TJI's claim that it has one of the most recognizable Mexican restaurant brands in America.  (Creel Decl. ¶¶ 12–13.) Therefore, because the Court finds that TJI's Mark is famous, and because no reasonable jury could find conclude otherwise, the Court will instruct the jury that this factor is satisfied.

### 2) Blurring and Tarnishment

Although the Court finds that the Mark is famous, whether there is sufficient evidence of blurring or tarnishment is best left for the jury.  As mentioned, dilution by blurring occurs when "consumers associate a famous mark that has traditionally identified the mark holder's goods with a new and different source."  *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 832 (8th Cir. 1999) (citation omitted).  The Lanham Act requires the Court to consider all relevant factors, including:

> (1) how similar the two marks are; (2) how distinctive the famous mark is; (3) how exclusive the famous mark owner's use of the mark is; (4) how recognizable the famous mark is; (5) the intent of the user of the allegedly dilutive mark; and (6) the existence of any actual association between the marks.

*Prairie Island Indian Cmty. v. Radisson Hotels Int'l, Inc.*, No. 20-1234, 2020 WL 7490034, at *4 (D. Minn. Dec. 21, 2020) (citing 15 U.S.C. § 1125(c)(2)(B)).

In contrast, dilution by tarnishment arises from "the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark."  15 U.S.C. § 1125(c)(2)(C).  Tarnishment can occur when "the goodwill and reputation of a plaintiff's trademark is linked to products which are of shoddy quality, or which conjure associations that clash with the associations generated by the owner's lawful use of the mark."  *Prairie Island Indian Cmty.*, 2020 WL 7490034, at *5 (citation omitted).  The mark must be used in a way that creates an "undesirable, unwholesome, or unsavory mental association with the plaintiff's mark."  *Anheuser-Busch, Inc. v. Balducci Publ'ns*, 28 F.3d 769, 777 (8th Cir.

1994) (quoting *Original Appalachian Artworks, Inc. v. Topps Chewing Gum, Inc.*, 642 F. Supp. 1031, 1039 (N.D. Ga. 1986)).

The Court finds that the same genuine disputes of material fact that foreclose summary judgment on likelihood of confusion also apply to the dilution by blurring claim. Additionally, TJI plans to offer evidence that any association between the marks tarnishes TJI's reputation.  First, they offer the testimony of Ms. Sarah Van Zee, who claims to have visited one of the Taco Chon locations in May 2021.  (Van Zee Decl. ¶ 6, at 36.)  Ms. Van Zee declared that she believes that the two marks sound similar.  (*Id.* ¶ 5.)  She also described the Taco Chon locale as "dirty" and with "debris on the floor and tables."  (*Id.* ¶ 6.)  Overall, it appears that Ms. Van Zee had a less than enjoyable visit.  (*Id.* ¶¶ 6–9.) Second, TJI points to online reviews of Taco Chon, including some below two-out-of-five stars.  (3rd Bruno Decl., Ex. 4, at 37–43, Mar. 9, 2023, Docket No. 71-1.)  This evidence suggests that Defendant's use of "Taco Chon's" may tarnish the Taco John's mark.[2]

The Court finds that TJI has put forth sufficient evidence to withstand a motion for summary judgment and that genuine disputes of material fact preclude summary

---

[2] The Court notes that the standard for tarnishment requires more than just association with poor quality, but TJI has introduced sufficient evidence to survive this stage of litigation. *See J & B Wholesale Distrib., Inc. v. Redux Beverages, LLC*, 621 F. Supp. 2d 678, 688 (D. Minn. 2007) ("Tarnishment occurs when a product is 'linked to products of shoddy quality or is portrayed in an unwholesome or unsavory context' with the result that 'the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods.")

judgment on the dilution claims.  Therefore, these claims will also be submitted to the jury.

### C.  Willfulness and Disgorgement

Finally, TJI requests that it be awarded Taco Chon's profits for the period of infringement.  (Compl. at 10.)  The Lanham Act contemplates the disgorgement or accounting of profits to remedy unfair infringement.  *Masters v. UHS of Del., Inc.*, 631 F.3d 464, 471 (8th Cir. 2011); 15 U.S.C. § 1117(a).  To recover profits, the plaintiff must demonstrate a violation under section 1125(a) or (d) of the Langham Act, or a "willful violation under section 1125(c) . . . subject to the principles of equity."  15 U.S.C. § 1117(a).  Disgorgement of profits may be based on unjust enrichment, as a measure of plaintiff's damages, or as deterrence for willful behavior.  *Masters*, 631 F.3d at 474.  Although a showing of willfulness is not a precondition for the disgorgement of profits based on a trademark infringement claim, it is a precondition for a profits award based on a trademark dilution claim.  *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020).

Taco Chon argues that there is no evidence that Defendants acted willfully or intentionally in adopting the name "Taco Chon."  But as previously discussed, Ramos's intent in selecting the name for his restaurants is a matter of credibility.  Therefore, the Court finds that there are disputed issues of material fact as to Defendants' willfulness and this is an issue within the jury's purview.

**CONCLUSION**

The Court concludes that some of Milissa Silva's testimony goes beyond her field of expertise and will restrict it accordingly. The Court will grant Plaintiffs' partial motion for summary judgment on the abuse of process claim because Defendants have put forth no evidence of an ulterior motive. Finally, the Court will deny Defendants' motion for summary judgment in its entirety and submit all of Plaintiffs' claims to the jury because disputed issues of material fact remain as to the likelihood of confusion and dilution.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion to Exclude Opinions and Testimony of Milissa Silva [Docket No. 42] is **GRANTED in part and DENIED in part**;

2. Plaintiffs' Partial Motion for Summary Judgment on Defendants' Counterclaim [Docket No. 37] is **GRANTED**;

3. Defendants' Motion for Summary Judgment [Docket No. 60] is **DENIED**; and,

4.  Plaintiffs' Motion to Strike Defendants' Reply Memorandum [Docket No. 76] is

**DENIED**.


DATED:  September 6, 2023
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge